UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ENGINEERED FLOORS, LLC,<br><br>    Plaintiff<br><br>v.<br><br>LAKESHORE EQUIPMENT COMPANY d/b/a LAKESHORE LEARNING MATERIALS,<br><br>    Defendant. | CIVIL ACTION NO.<br>4:20-cv-00169-JPB |

# **ORDER**

Before the Court is Lakeshore Equipment Company d/b/a Lakeshore Learning Materials' ("Lakeshore") Motion to Transfer Venue or, Alternatively, to Dismiss ("Motion"). ECF No. 5. Having reviewed and fully considered the papers[1] filed therewith, the Court finds as follows:

---

[1] Both parties submitted extrinsic evidence for the Court's consideration. The Court may consider such evidence on a motion to dismiss on jurisdictional grounds. *See Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) ("Where . . . the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.") (internal punctuation omitted).

I.  **BACKGROUND**

Plaintiff Engineered Floors, LLC ("Engineered Floors") filed a complaint against Lakeshore for its alleged failure to pay invoices for carpeting Engineered Floors sold to Lakeshore.

Lakeshore and the Beaulieu Group, LLC ("Beaulieu") entered into Pricing Agreements dated August 28, 2017, and February 10, 2017, governing Lakeshore's purchase of carpeting from Beaulieu ("the Pricing Agreements"). The Pricing Agreements provided that they were "governed by the laws of the State of California . . . without regard to or application of California's principles or laws regarding conflict of laws" and set forth agreed upon pricing and other terms for the identified products.

Lakeshore thereafter purchased carpeting from Beaulieu through numerous purchase orders issued pursuant to the Pricing Agreements. Like the Pricing Agreements, the purchase orders stated that California law governed the orders. Beaulieu accepted and fulfilled the purchase orders.

The invoices Beaulieu issued to Lakeshore as a result of the purchase orders contained the following notice: "The terms and conditions for the transaction on this invoice are governed by Beaulieu's Terms and Conditions of Sale, dated 10/07/14, located at www.beaulieugroup.com/notices/terms.htm which are

incorporated herein by reference.  The Purchaser has read and agrees to these Terms and Conditions."  The Beaulieu Terms and Conditions of Sale (the "Beaulieu Terms") provided that "[e]ach party [agreed to] submit[] to the exclusive jurisdiction of the courts of the State of Georgia and the United States District Court for the Northern District of Georgia" and "expressly waive[d] any and all objections . . . to venue, including, without limitation, the inconvenience of such forum, in any such courts."  Lakeshore paid the invoices without objection.

On July 16, 2017, Beaulieu filed a voluntary petition for bankruptcy relief in the Bankruptcy Court for the Northern District of Georgia ("Bankruptcy Court").[2]  These proceedings culminated in Engineered Floors' agreement to purchase substantially all of Beaulieu's assets.  The sale was approved by the Bankruptcy Court on November 1, 2017.  From the inception of the Pricing Agreements through November 3, 2017, Beaulieu issued 145 invoices totaling approximately $1.6 million to Lakeshore for carpeting purchased.

After the approval of the bankruptcy sale, Engineered Floors continued Beaulieu's operations, and Lakeshore continued to issue purchase orders to

---

[2] The Court may take judicial notice of pleadings filed in another case on a motion to dismiss.  *See Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1076 n.9 (11th Cir. 2013); Fed. R. Evid. 201(b).  This does not require the Court to convert the motion to dismiss into one for summary judgment.  *See Universal Express, Inc. v. U.S. Sec. & Exch. Comm'n*, 177 F. App'x 52, 53 (11th Cir. 2006).

3

Engineered Floors. The purchase orders contained the California choice of law provision.

Engineered Floors fulfilled the purchase orders and issued twenty-three respective invoices to Lakeshore reflecting the price set forth in the Pricing Agreements. The total value of the Engineered Floors invoices was almost $400,000, and all, except one, referenced the Beaulieu Terms. The combined value of the invoices generated by Beaulieu and Engineered Floors over the course of the relationship with Lakeshore totaled nearly $2 million.

In February 2018, Lakeshore returned carpeting valued at over $22,000 to Engineered Floors for alleged defects, and Engineered Floors in turn issued credits to Lakeshore. Lakeshore stopped paying Engineered Floors' invoices that same month. Lakeshore's unpaid balance with Engineered Floors was approximately $140,000.

In August 2018, Lakeshore filed a complaint in California state court against Engineered Floors related to its sale of the allegedly defective carpeting (the "First California Action"). Engineered Floors removed the case to federal court and thereafter filed an adversary proceeding in the Bankruptcy Court seeking to enjoin the First California Action and to resolve Lakeshore's claims in the Bankruptcy Court.

On October 31, 2018, Lakeshore and Engineered Floors entered into a joint stipulation to dismiss the First California Action without prejudice to allow the Bankruptcy Court to rule on whether Lakeshore's claims against Engineered Floors should be decided in that court.

On June 12, 2020, although the Bankruptcy Court action was still pending, Engineered Floors filed the instant action in Georgia state court, and Lakeshore removed it to this Court.

On July 7, 2020, Lakeshore filed its own (new) action in California federal court (the "Second California Action"). The instant action and the First and Second California Actions concern the same claims and relate to the same purchase orders and invoices. Engineered Floors moved to dismiss the Second California Action or to transfer it to this Court on various grounds, including that the instant action was filed first.

On November 16, 2020, the Bankruptcy Court resolved certain claims among Lakeshore, Engineered Floors and the bankruptcy estate, and on November 23, 2020, the court severed the remaining claims between Lakeshore and Engineered Floors from the bankruptcy proceedings.

On December 11, 2020, the court in the Second California Action stayed the matter "given the uncertainty of the outcome of the issues" in this Court.

In this case, Lakeshore argues that the Court lacks personal jurisdiction over it and seeks to transfer the matter to the Central District of California where the Second California Action is pending. Lakeshore also argues that transfer is proper under 28 U.S.C. § 1404(a) even if the Court finds it has personal jurisdiction over Lakeshore.

## II.   ANALYSIS

The Court first turns to Lakeshore's request to transfer this action to the Central District of California and need not resolve the personal jurisdiction question in order to conduct this analysis. *See Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 992 n.16 (11th Cir. 1982) (stating that "[i]n this Circuit, a court lacking personal jurisdiction of the defendant may transfer the case under either [§] 1404(a) or [§] 1406(a)"); *Koehring Co. v. Hyde Const. Co.*, 324 F.2d 295, 298 (5th Cir. 1963) (finding that the court was authorized to transfer the action under § 1404(a) "whether or not [it] had personal jurisdiction over the defendant").

"The question of whether to transfer venue is a two-pronged inquiry." *Merswin v. Williams Cos., Inc.*, No. 1:08-cv-2177, 2009 WL 249340, at *5 (N.D. Ga. Jan. 30, 2009). First, the transferee venue must be one in which the action could originally have been brought by the plaintiff, which means that the transferee

court must have venue and both subject-matter and personal jurisdiction. *See Regenicin, Inc. v. Lonza Walkersville, Inc.*, No. 1:13-cv-3596, 2014 WL 11930591, at *2 (N.D. Ga. May 1, 2014). Given that Lakeshore and Engineered Floors are currently parties to an action in the Central District of California regarding the claims raised here, and Engineered Floors has not disputed that court's jurisdiction over the action, the Court finds that the first prong is satisfied.

Next, the court balances "three broad interests: the convenience of the parties, the convenience of the witnesses, and the interests of justice." *Regenicin*, 2014 WL 11930591, at *2. Within these interests, courts deem the following factors relevant:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). "But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, (1947). The Court addresses these factors in turn.

**The Convenience of the Witnesses and Parties; the Availability of Process to Compel the Attendance of Unwilling Witnesses**

Lakeshore argues that all of the key witnesses in this action are located in California, including Lakeshore's and Engineered Floors' fact and expert witnesses and third parties. Lakeshore's list of California witnesses includes:

Lakeshore Employees

- Tina Lopez-Dryer (Domestic Manager): determined that the carpeting was defective, reported the defects to Engineered Floors and met with Engineered Floors employees to inspect the carpeting at Lakeshore's Carson, California facility.

- Jeff Champlin (Director of Vendor Relations): managed the defect issue and is knowledgeable about the costs associated with replacing the carpeting and the resulting damages.

Engineered Floors Employees

- Steve Cvitanovich (Territory Sales Manager): responded to Lakeshore's complaints regarding the defective products and allegedly admitted that Engineered Floors had breached its obligations to Lakeshore.

Third Party Witnesses

- Aaron Tennyson (Beaulieu's Regional Vice President): wrote several emails relating to the alleged issues with the carpeting.

- Marc Robb (Abstract): owner of Abstract, a third-party company that received, inspected and observed the alleged defects.

Expert Witnesses

- Kenneth Newson (Lakeshore's carpeting expert)

- Irfan Murtaza (Engineered Floors' carpeting expert)

Engineered Floors devotes only one paragraph in its response brief to the analysis of the § 1404(a) factors. With respect to the convenience of the witnesses, Engineered Floors merely states that it has "witnesses in Georgia." In its argument for personal jurisdiction over Lakeshore, Engineered Floors refers to Dale Davis, its Corporate Credit Manager, and "the machinery and personnel who made the carpeting" as Georgia-based employees. However, it does not explain how these employees relate to the dispute. Engineered Floors also states that it has engaged an expert witness in Kentucky (in addition to its California expert witness), and it hired Professional Testing Laboratory located in Georgia, in conjunction with Lakeshore, to provide testing services related to the alleged defects.

> The convenience of the witnesses is of great importance to the decision to transfer venue from one forum to another, and the focus of the Court should be on the convenience of "key witnesses." Additionally, there is a distinction between party witnesses and non-party witnesses. Party witnesses are the parties themselves and those closely aligned with a party, and they are presumed to be more willing to testify in a different forum, while there is no such presumption as to non-party witnesses. Given the fact that, when possible, live testimony is preferred over other means of presenting evidence, the convenience of the non-party witnesses weighs most heavily on the [c]ourt in deciding on a motion to transfer venue.

*Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004).

Here, the record supports Lakeshore's contention that key witnesses involved in the relevant transactions or who are knowledgeable about the alleged defects, including third parties, are located in California. Therefore, Lakeshore would not have the means to compel their attendance at trial in Georgia.

By comparison, the Georgia witnesses identified by Engineered Floors are party witnesses or retained experts who have a pecuniary interest to appear at trial in another forum. Moreover, because Engineered Floors has not provided any information regarding the role these witnesses played in the dispute, it is not clear that they are key to the resolution of the issues.

For these reasons, the Court finds that the convenience of the witnesses and parties and the availability of process to compel the attendance of unwilling witnesses weigh strongly in favor of transfer to California.

### The Location of Relevant Documents and the Relative Ease of Access to Sources of Proof; the Locus of Operative Facts

Lakeshore contends that "all sources of proof" in this case are located in California, including 3,580 rolls of defective carpeting. It asserts that it anticipates inspecting these rolls prior to trial and making some rolls available for jury inspection. Lakeshore also argues that the locus of operative facts is in California because the sale of the carpeting, communications between Lakeshore and

Engineered Floors staff and the identification and inspection of the alleged defects all occurred in California.

Engineered Floors does not respond directly to this point but states elsewhere in its brief that Lakeshore "is storing a large portion of the carpeting it claims is defective in Kentucky (not just in California)."

When "significant documentary evidence" is located in the transferee forum, and "[t]he trial will be facilitated by having the forum in close proximity to such evidence," courts will find that this factor weighs in favor of transfer. *See*, *e.g.*, *id*. at 1357 (stating that transfer was prudent where the jury's inspection of evidence would have been impossible in the transferor forum).

In this case, Lakeshore's unrebutted assertion that key and unwieldy evidence (3,580 rolls of carpeting) located in California is central to the case weighs strongly in favor transfer—as does evidence that discovery of the alleged defects, inspection of the carpeting and substantial communications among Engineered Floors and Lakeshore employees or representatives occurred in California.

**The Relative Means of the Parties**

Given that both Lakeshore and Engineered Floors are corporate entities with millions of dollars in annual output (the transactions between Lakeshore and

Engineered Floors alone totaled almost $2 million), the Court agrees with Lakeshore, and Engineered Floors does not dispute, that the relative means of the parties is a neutral factor.

### The Forum's Familiarity with the Governing Law

The choice of law question is a significant issue in this case. Lakeshore contends that California law applies based on the choice of law provision in the Pricing Agreements and the purchase orders issued pursuant to them. It explains that California law governs because Engineered Floors accepted, fulfilled and accepted payment under various purchase orders that flowed from the Pricing Agreements. In Lakeshore's view, Engineered Floors should not be permitted to benefit from the preferential pricing reflected in the Pricing Agreements and purchase orders and at the same time disavow the choice of law provision that may not be favorable to it.

Further, Lakeshore argues that because California law applies, the Beaulieu Terms attached to the invoices, including the choice of law and forum selection clauses, may not contradict or modify the terms of the earlier Pricing Agreements and purchase orders.

On the other hand, Engineered Floors contends that Georgia law applies because by accepting and paying for carpeting sold under invoices containing the

12

Beaulieu Terms, Lakeshore agreed to the Georgia forum selection and choice of law clauses reflected therein.  Engineered Floors further argues that a forum selection clause in an invoice is valid under Georgia law, especially where the recipient of the invoice does not object to it.

Additionally, Engineered Floors argues that the Pricing Agreements "are of no consequence" because it was not a party to the agreements and did not assume them with the bankruptcy sale.

In a nutshell, there does not appear to be a dispute that the Pricing Agreements governed Lakeshore's and Beaulieu's relationship.  At the heart of the disagreement is (i) whether Engineered Floors assumed the Pricing Agreements and (ii) whether the invoices issued by Beaulieu and Engineered Floors modified or superseded the terms of the Pricing Agreements and purchase orders.

With respect to the first issue, California law is clear that "[a] voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting."  Cal. Civ. Code § 1589.  *See also id*. § 3521 ("He who takes the benefit must bear the burden.").  In deciding that a plaintiff "was not entitled to make use of [an insurance] policy as long as it worked to her advantage [and] then attempt to avoid its application in defining the forum in which her dispute . . .

should be resolved," the court in *NORCAL Mutual Insurance Co. v. Newton* emphasized that "'[n]o person can be permitted to adopt that part of an entire transaction which is beneficial to him/her, and then reject its burdens.'" 100 Cal. Rptr. 2d 683, 699 (Cal. Ct. App. 2000). *Cf. Tyler v. J.I. Metrovich Bldg. Co.*, 190 P. 208, 209 (Cal. Ct. App. 1920) (stating that "it is elementary that a party cannot denounce a contract as void, and at the same time demand enforcement of its provisions favorable to him").

Georgia law is similar in providing that a party may be bound by a contract through his performance or acceptance of the benefits thereunder. For example, in *Del Lago Ventures, Inc. v. QuikTrip Corp.*, the Georgia Court of Appeals stated that even if "one of the parties has not signed [a contract], his acceptance is inferred from a performance under the contract, in part or in full, and he becomes bound." 764 S.E.2d 595, 599 (Ga. Ct. App. 2014). *See also Kennington v. Small*, 136 S.E. 326, 329 (Ga. Ct. App. 1926) (stating that "[a] defendant, having received the benefit of . . . performance, is bound by the terms of the contract"); *Gruber v. Wilner*, 443 S.E.2d 673, 676 (Ga. Ct. App. 1994) (stating that "[a] contract signed by one of the parties only, but accepted and acted on by the other party to it, may be just as binding as if it were signed by both parties, if the obligations of the parties are mutual") (internal punctuation omitted).

In light of the similarity between Georgia and California law, the Court need not decide which applies to the question of whether Engineered Floors assumed the Pricing Agreements. The conclusion is the same under either state's law. The record shows that Engineered Floors continued to perform under and accept the benefits of the Pricing Agreements after it purchased Beaulieu's assets. Indeed, Engineered Floors provided carpeting and submitted twenty-three invoices on its own behalf using the agreed upon price terms. Because Engineered Floors accepted the benefits of the Pricing Agreements, including the price terms, it cannot now disavow the choice of law provision in those agreements. On these facts, Engineered Floors is deemed to have assumed the Pricing Agreements and is thereby bound by their terms, including the California choice of law provision.[3]

Similarly without merit is Engineered Floors' contention that its invoices modified or superseded the terms of the Pricing Agreements. In *India Paint and Lacquer Co. v. United Steel Production Corp.*, the court referenced the "prevailing rule" under California law that "an invoice, standing alone, is not a contract and a buyer is ordinarily not bound by statements thereon which are not a part of the

---

[3] Engineered Floors' argument that it did not assume the agreements during Beaulieu's bankruptcy proceedings is unavailing. This fact is not relevant because Engineered Floors' subsequent performance under the Pricing Agreements shows that it eventually assumed them.

15

original agreement." 267 P.2d 408, 415 (Cal. Ct. App. 1954) (internal citations omitted). The rationale is that payment of an invoice in accordance with an existing contract does not, by itself, establish assent to the addition of terms to the underlying contract. *See C9 Ventures v. SVC-W., L.P.*, 136 Cal. Rptr. 3d 550, 565 (Cal. Ct. App. 2012). For that to occur, the payment "must be related to the proposed modification or addition and differ from the performance already required of the party by the existing contract." *Id*. (finding that because the party's payment of the invoices was already required under the existing contract, and it took no additional steps constituting acceptance of the indemnification provision, the party's payment of the invoice "did not manifest assent to the invoice's conditions, but merely constituted performance of the previous . . . contract between the parties"). In short, absent other action that constitutes acceptance of the modified terms, the mere payment of an invoice cannot be deemed to modify the terms of an existing agreement. *See id*.

In this case, Lakeshore was already obligated to pay invoices submitted pursuant to the purchase orders (and the Pricing Agreements), so its fulfillment of that duty did not constitute assent to the Georgia choice of law and forum selection clause in the Beaulieu Terms. The Court, therefore, finds that the Beaulieu Terms did not modify the California choice of law provision in the Pricing Agreements

and purchase orders. As such, California law is relevant for the purpose of assessing whether the forum's familiarity with the governing law weighs in favor of transfer.[4]

Although district courts are eminently capable of applying the law of states other than the one in which they sit, the transferee court in this case will be "at home with the [governing law]," and this factor thus weighs in favor of transfer. *See Atl. Marine Constr. Co., Inc. v. U. S. Dis. Ct.*, 571 U.S. 49, 63 n.6 (2013) (noting that in a § 1404(a) analysis, courts may consider "'the local interest in having localized controversies decided at home [and] the interest in having the trial of a diversity case in a forum that is at home with the law'").

### The Weight Accorded a Plaintiff's Choice of Forum; Trial Efficiency and the Interests of Justice, Based on the Totality of the Circumstances

Lakeshore acknowledges that a plaintiff's choice of forum is ordinarily entitled to deference, but it argues that such deference should not be afforded here because Engineered Floors has litigated these same claims in another forum (the Bankruptcy Court). Lakeshore also contends that Engineered Floors' decision to file suit in this Court constitutes forum shopping. Lakeshore reasons that although

---

[4] Because the Georgia forum selection clause does not apply here, the Court need not address Engineered Floors' argument that the clause should be given controlling weight in the § 1404(a) analysis.

Engineered Floors stipulated to the dismissal of the First California Action to allow its subsequently filed action in Bankruptcy Court to proceed, Engineered Floors nevertheless filed the action in this Court ***before*** those proceedings had concluded.

Engineered Floors does not address this argument directly and responds only that Lakeshore's arguments for transfer "ignore" Engineered Floors' "rights to have its claims determined in its chosen forum."

"[I]t is well-established that courts apply a presumption in favor of the plaintiff's choice of forum." *Freeman v. Graco, Inc.*, No. 1:13-cv-662-ODE, 2013 WL 12070089, at *4 (N.D. Ga. Nov. 7, 2013). "That being said, this factor is not dispositive on its own." In *Huntley v. Chicago Board of Options Exchange*, the court found that "on balance," other factors weighed heavily in favor of transfer and refused to give the plaintiff's choice of forum controlling weight. 132 F. Supp. 3d 1370, 1375 (N.D. Ga. 2015). The court reasoned that it could not "ignore the fact that [the] case [was] primarily about alleged acts and omissions that took place in [the transferee forum]" and would "require testimony from . . . nonparty witnesses, who also live in [that forum]." *Id*.

Here, the Court is mindful of the traditional deference given to a plaintiff's choice of forum, but like the court in *Huntley*, the Court finds that such deference does not outweigh the other applicable factors. The convenience of the witnesses

is also of great importance in a § 1404(a) analysis, and as described herein, Lakeshore has demonstrated that key witnesses are located in California and are out of reach of this Court's jurisdiction whereas Engineered Floors has not shown that any of the witnesses it identified are key to resolution of this case or that it would be unable to produce them in California for trial.

Further, the physical evidence (and other significant evidence) at the center of this dispute is located in California.  The Court is also cognizant of the consideration of having the trial of a diversity case in a forum that is at home with the law.

Finally, in looking at the totality of the circumstances, the Court notes that while not dispositive (and the conclusion would not otherwise change), the facts tend to support Lakeshore's contention that Engineered Floors engaged in forum shopping by filing suit in this Court.

In sum, because the convenience of key witnesses, the availability of process to compel attendance at trial, the location of and access to key evidence, the familiarity of the transferee forum with the governing law, trial efficiency, the interests of justice and the totality of the circumstances all weigh strongly in favor of transfer, the Court **GRANTS** Lakeshore's request to transfer (ECF No. 5).  All other issues raised in Lakeshore's Motion not addressed herein are **DENIED** as

moot. The Clerk is **DIRECTED** to transfer the case to the Central District of California.

    **SO ORDERED** this 8th day of March, 2021.

                                                                _____
                                                                 J. P. BOULEE
                                                                 United States District Judge